OPINION
{¶ 1} Appellant Jennifer Elsass appeals from the June 28, 2005, Judgment Entry of the Stark County Court of Common Pleas, Juvenile Division, which terminated appellant's parental rights and granted permanent custody of Izaiah Wilson to appellee Stark County Department of Job and Family Services.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellant Jennifer Elsass is the mother of Izaiah[1] Wilson (DOB 11-11-03). Eric Wilson is Izaiah's father.
 {¶ 3} On December 10, 2003, appellee Stark County Department of Job and Family Services (hereinafter "SCDJFS") filed a complaint alleging that Izaiah was a dependent and neglected child and seeking temporary custody of him. At the time the complaint was filed, appellant was a minor. Pursuant to a Judgment Entry filed on the same date, SCDJFS was ordered to take Izaiah into shelter care custody.
 {¶ 4} Subsequently, on March 8, 2004, appellant and Eric Wilson stipulated to a finding of dependency and, as memorialized in a Judgment Entry filed the same day, temporary custody was granted to SCDJFS.
 {¶ 5} On May 6, 2005, SCDJFS filed a Motion for Permanent Custody. A hearing on the motion was held on June 13, 2005. The following testimony was adduced at the best interest portion of such hearing.
 {¶ 6} At the hearing, Elizabeth Parsons, an ongoing worker assigned by SCDJFS to Izaiah's case, testified that Izaiah is a Caucasian male who has extensive physical disabilities. Parsons testified that Izaiah is missing the corpus callosum in his brain, which allows the brain to communicate back and forth. Parsons further testified that "[t]he white and gray brain matter are mixed together and the fibers in his brain are crossed all of which cause numerous seizures every day." Transcript at 29.
 {¶ 7} Testimony also was adduced that Izaiah is blind and can see only very bright light or darkness and that he was in physical therapy. According to Parsons, a neurologist and a neurosurgeon have indicated that Izaiah will likely be retarded and "very floppy or spastic and probably will be unable to use the right side of his body." Transcript at 29. Izaiah is unable to hold up his head.
 {¶ 8} The following is an excerpt from Parsons' testimony:
 {¶ 9} "A. He sees two neurologist [sic] from Akron Children's as well as a neurosurgeon. He also sees a Doctor through the Palliative Care Team which works in home and in hospital with children who are dying or at high risk of dying. Um he works with I believe two or three therapist [sic] through Eastgate through MRDD for therapy services as well as in home therapy services. He has um weekly biweekly nursing care that comes into the foster home to help with him and they're looking at placing a feeding tube so that will add someone else to his team as well as an optometrist a pediatric ophthalmologist for his eyes. Ah people that are involved through Healthy Tomorrows ah I think that's all. And a pediatrician." Transcript at 29-30. In all, Izaiah has five to seven appointments a week. Parsons was unable to say whether Izaiah suffered from any psychological disorders.
 {¶ 10} According to Parsons, Eric Wilson, Izaiah's father, last saw Izaiah in June of 2004. While appellant is permitted to visit Izaiah at his foster home on a daily basis and calls on a "sporadic" basis to get updates, she had only gone to the foster home once since September of 2004 to visit Izaiah. Transcript at 30. Parsons testified that appellant visited Izaiah on October 15, 2004, and that the last medical appointment for Izaiah that appellant attended was in October of 2004, even though SCDJFS offered to arrange transportation for her. While appellant and Eric Wilson were very attentive to Izaiah in the beginning and often visited together, Parsons testified that as Izaiah got older, appellant "really struggle[d]" to interact with him and treated him as a normal child rather than one with special needs. Transcript at 32.
 {¶ 11} Parsons further testified that Izaiah's foster parents have extensive training, have been foster parents for over 25 years, and that they take in children with severe medical handicaps. Parson also testified that the foster parents, who Izaiah had been with since September 22, 2004, were not an adoptive home but that they "were willing to maintain Izaiah in their home as long as needed or until we can located (sic) an appropriate adoptive placement that can meet his needs." Transcript at 34.
 {¶ 12} During the hearing, Parsons was asked whether any relatives had been identified or explored for either custody or placement. Although Parsons tried to contact Patricia Wilson, Eric Wilson's former legal custodian, about custody or placement of Izaiah, Patricia never returned her calls. According to Parsons, no other relatives were willing to take placement of Izaiah or were appropriate for placement.[2] Parsons recommended that Izaiah stay in the custody of SCDJFS so that it could locate a possible adoptive home for him.
 {¶ 13} On cross-examination, Parsons testified that Izaiah's life expectancy was "early twenties if that long." Transcript at 36. Parsons further testified that, if permanent custody was granted, she would look into an adoptive placement that would allow appellant to have some contact and involvement with Izaiah. While Parsons was unsure if Izaiah would know who appellant was or be able to recognize her, Parsons believed that such an adoptive placement would be beneficial to appellant. When asked what the odds were of Izaiah being adopted with all of his medical problems, Parsons responded as follows:
 {¶ 14} "Um I think the likelihood is pretty high. We've identified several homes and I've worked with several other families where I've had children with much worse medical conditions that we have successfully found adoptive placements for." Transcript at 37.
 {¶ 15} According to Parsons, Eric Wilson, Izaiah's father, had not asked for visitation with his son.
 {¶ 16} Julie Howell, the Guardian Ad Litem since December 10, 2003, also testified at the best interest portion of the hearing. Howell testified that she observed visitation with appellant and Izaiah four times for a half an hour to an hour and a half each time and that the last time was over a year ago. According to Howell, appellant visited Izaiah in May of 2005 and had a visit in February of 2005 which Howell did not attend. Howell testified that, during the visits, appellant was attentive to her child and that, for her best interest, appellant should be allowed to see Izaiah regardless of the outcome of the hearing. Howell concurred with Parsons that Izaiah probably would not recognize appellant.
 {¶ 17} Howell was also questioned about Eric Wilson's visits with Izaiah which she attended. While Eric, who was sixteen or seventeen years old at the time, was attentive to his son, "he was angry at the situation and circumstances that they were in." Transcript at 42. According to Howell, Eric did not like going to parenting classes and did not believe that they were necessary. Howell believed that it would be in Eric's best interest for him to have visitation with Izaiah.
 {¶ 18} On redirect, Howell testified that she believed that appellant loved Izaiah.
 {¶ 19} The trial court, as memorialized in a Judgment Entry filed on June 28, 2005, terminated appellant's parental rights and granted permanent custody of Izaiah to SCDJFS. The trial court specifically found that it was in Izaiah's best interest to be placed in the permanent custody of SCDJFS for purposes of adoption.
 {¶ 20} Appellant now raises the following assignment of error on appeal:
 {¶ 21} "THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE MINOR CHILD WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY, INSTEAD OF PLANNED PERMANENT LIVING ARRANGEMENT, WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."
 I {¶ 22} Appellant, in her sole assignment of error, argues that the trial court's judgment that Izaiah's best interests would be served by granting permanent custody to SCDJFS, instead of planned permanent living arrangement, was against the manifest weight and sufficiency of the evidence. We disagree.
 {¶ 23} We are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279,376 N.E.2d 578.
 {¶ 24} A court may only grant permanent custody upon a showing, by clear and convincing evidence, that an award of permanent custody is in the child's best interest. R.C. 2151.414(D). Revised Code 2151.414(D) sets forth the factors a trial court should look to in determining the best interest of the child. The factors are:
 {¶ 25} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 26} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 27} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 28} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 29} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 30} Appellant urges the trial court should have considered a planned permanent living arrangement as a final disposition for Izaiah, even though appellee requested permanent placement.
 {¶ 31} Pursuant to R.C. 2151.353(A)(J), a planned permanent living arrangement is appropriate if the trial court finds by clear and convincing evidence that it is in the best interest of the child and that one of the following conditions is met: (1.) The child because of physical, mental, or psychological problems or needs is unable to function in a family-like setting and must remain in residential or institutional care; (2.) The parents of the child have significant physical, mental, or psychological problems, and are unable to care for the child because of those problems, and adoption is not in the best interest of the child pursuant to R.C. 2151.414(D) and the child maintains a significant positive relationship with a parent or relative, and (3) the child is sixteen years old or older, and after being counseled on the permanent placement options available to him, is unwilling to accept or unable to adapt to a permanent placement.
 {¶ 32} Appellant specifically contends that Izaiah cannot function in a family-like setting due to his medical limitations and, therefore, should have been placed into a planned permanent living arrangement. However, as noted by SCDJFS in its brief, none of Izaiah's physical conditions or the services that he receives establish that he cannot function in such a setting. As is stated above, at the hearing, testimony was adduced that SCDJFS has been able to find adoptive homes for children with even more severe medical problems than Izaiah. Parsons, when asked the odds for Izaiah being adopted, indicated that she thought the likelihood was "pretty high." Transcript at 37. Moreover, testimony also was adduced that while appellant and Eric Wilson might benefit from visitation with Izaiah, Izaiah himself would not benefit and most likely would be unable to recognize appellant. In addition, testimony was adduced at the hearing that appellant visited only sporadically and had exceeded a ninety day period without visitation.
 {¶ 33} In short, upon our review of the record, we find that the trial court did not err in finding that it was in Izaiah's best interest to be placed in permanent custody of SCDJFS, rather than to be placed in a planned permanent living arrangement, and did not err in terminating appellant's parental rights.
 {¶ 34} For the foregoing reasons, appellant's sole assignment of error is overruled.
 {¶ 35} Accordingly, the judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed.
Edwards, J. Gwin P.J. and Farmer, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed. Costs assessed to appellant.
[1] The parties use two different spellings for the child's name. While appellee uses the spelling "Izaiah," appellant uses the spelling "Isaiah." We are using "Izaiah" which is how the name appears on the complaint in this case.
[2] Appellant's mother has an extensive drug and alcohol history and has been involved in incidences of domestic violence.